IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PRIMA TEK II, L.L.C.,**
**an Illinois Limited Liability Corporation,**

     **Plaintiff,**

**v.**

**KLERK'S FLEXIBLE PACKAGING, BV,**
**a Dutch Corporation, and HOLLAND**
**PACK BV, a Dutch Corporation,**

     **Defendants.**                        **Case No. 05-238-DRH**

<u>**MEMORANDUM & ORDER**</u>

**HERNDON, District Judge:**

## I.  INTRODUCTION & FACTUAL BACKGROUND

Presently before the Court is defendant Klerk's Flexible Packaging BV ("Klerk's") and Holland Pack BV's ("Holland Pack") (collectively "Defendants") Motion to Dismiss, or in the Alternative, for a More Definite Statement and supporting memorandum.  (Docs. 9 & 10.)  Also before the Court is plaintiff Prima Tek II, L.L.C.'s ("Plaintiff" or "Prima Tek") Motion to Supplement Record in Connection with Defendants' Motion to Dismiss.  (Doc. 30.)

Plaintiff filed its Complaint (Doc. 1) on April 5, 2005, stating four separate counts of federal patent infringement pursuant to **35 U.S.C. § 271** against

Defendants.  Plaintiff generally averred it was the rightful owner of said patents through an exclusive license of all rights (including the right to sue) and that defendants had directly or indirectly infringed one or more claims of each of the four stated patents.[1]  The Complaint itself did not allege many relevant facts other than the aforementioned allegations.  In lieu of an Answer, Defendants filed their Motion to Dismiss or in the Alternative for More Definite Statement.  (Doc. 9.)  Plaintiff filed its opposing Response to which Defendants filed their reply.  (Docs. 24 & 25.)

Defendants' Motion to Dismiss is made pursuant to **Federal Rule of Civil Procedure 12**, based on several different affirmative defenses as follows:

(1) Pursuant to **Federal Rule of Civil Procedure 12(b)(2)**, a dismissal should be warranted because the Court lacks personal jurisdiction over Defendants;

(2) Pursuant to **Federal Rule of Civil Procedure 12(b)(5)**, a dismissal should be warranted based upon the affirmative defense that Plaintiff failed to properly serve Defendants; and

---

[1]  A brief description of the four patents-in-suit are as follows:

- Count I - **U.S. Patent No. 5,581,938 ("938 patent")**
Entitled:  *DECORATIVE SLEEVE FOR COVERING A FLOWER POT*
Issued by the USPTO:  December 10, 1996.

- Count II - **U.S. Patent No. 6,598,343 ("343 patent")**
Entitled:  *METHOD OF COVERING A POTTED PLANT*
Issued by the USPTO: July 29, 2003

- Count III - **U.S. Patent No. 6,539,666 ("666 patent")**
Entitled: *METHOD OF COVERING A POT OR FLORAL GROUPING WITH A SLEEVE HAVING A CURVILINEAR LOWER END*
Issued by the USPTO: April 1, 2003

- Count III - **U.S. Patent No. 6,807,771 ("771 patent")**
Entitled: *METHOD OF COVERING A POT OR FLORAL GROUPING WITH A SLEEVE HAVING A CURVILINEAR LOWER END*
Issued by the USPTO: April 1, 2003

(3)     Pursuant to **Federal Rule of Civil Procedure 12(b)(3)**, a dismissal should be warranted based upon the affirmative defense that the venue of this case is improper under the doctrine of *forum non conveniens*.

In the alternative, Defendants have moved, pursuant to **Federal Rule of Civil Procedure 12(e)**, for a more definite statement based on the grounds that Plaintiff's Complaint is too vague and ambiguous, preventing Defendants from responding adequately.

This is a patent infringement case.  Plaintiff is an Illinois limited liability company, with its corporate headquarters in Highland, Illinois.  It appears that Plaintiff's main corporate purpose is to serve as a licensing agent for certain patents and technology – some of which are at issue in this case.  (Doc. 10, p. 2.; *see also* ***Prima Tek II v. Klerk's Plastic Industries,*** Case No. 00-583-GPM, Doc. 132, p. 7, ¶ 4.)  Specifically, the subject matter of the four patents at issue in this case deal with decorative sleeves used to cover potted plants.[2]  (Doc. 24, p. 2.)  The decorative plant sleeve at issue in this case is marketed under the name "Tylar" sleeve.  (*Id.*)  Plaintiff claims that Defendants infringed its patents when, in 2004, Defendants began to offer the Tylar sleeve for sale in the United States.  (*Id.*)

Defendant Klerk's is a foreign Dutch business entity with its principal place of business in The Netherlands.[3]  (Doc. 10, p. 2.)  In the past, Klerk's

---

[2]  These decorative plant sleeves are often also referred to as "covers."

[3]  Klerk's explains that it was formerly known as "Klerk's Plastic Industrie, B.V."  (Doc. 10, p. 3, n.3.)

previously entered into several separate licensing agreements with Plaintiff, granting it the right to manufacture and sell decorative plant sleeves.  Both parties similarly state that these licensing agreements between Plaintiff and Klerk's no longer remain in effect.  (Doc. 10, p. 2, Doc. 24, p. 2.)  Klerk's alleges that it maintains no contacts with the state of Illinois since the termination of the licensing agreements with Plaintiff in 2002, except for contacts arising from litigation related to those prior license agreements.  (Doc. 10, p. 2; *see also **Prima Tek II v. Klerk's Plastic Industries, BV, et al.,*** Case No. 00-583-GPM (S.D. Ill.).)

Klerk's states that it has no employees, officers or agents[4] in Illinois, is not licensed to do business in Illinois, does not own or rent property in Illinois, and does not purchase products from any Illinois-based company.  Further, Klerk's states that it does not maintain a website offering products for sale to Illinois residents, does not maintain a bank account in Illinois, has no registered agent for accepting service of process in Illinois, nor does it attempt to recruit Illinois residents as future employees.  Klerk's declares that it is no longer in a contractual relationship with Plaintiff.  Lastly, Klerk's states that it has not sold any products in Illinois for the past five years.  (Doc. 10, pp. 4-6.)

Defendant Holland Pack is also a foreign Dutch business entity with its principal place of business in The Netherlands.  Holland Pack distributes various products for the floriculture industry, including plant sleeves.  (Doc. 10, p. 2.)

---

[4] Also with the exception of its attorneys, hired to litigate this suit and previous others.

Holland Pack also alleges that it has no contacts with the state of Illinois. Further, Defendants state that Holland Pack was not formed until 2005. (*Id*. at 5.) Documentary evidence, submitted by Plaintiff in its opposing Response, shows that Klerk's, in an undated letter sent to a potential customer, indicates it appointed Holland Pack as its newly appointed exclusive agent. (*See* Doc. 24, Ex. A-3, p. 7.)

Like Klerk's, Holland Pack is also a foreign corporation with no employees, officers or agents (except attorneys) in Illinois, is not licensed to do business in Illinois, does not own or rent property in Illinois, and does not purchase products from any Illinois-based company. Further, Holland Pack states that it also does not maintain a website offering products for sale to Illinois residents, does not maintain a bank account in Illinois, has no registered agent for accepting service of process in Illinois, and does not recruit Illinois residents as future employees. Holland Pack is also not currently in a contractual relationship with Plaintiff. Finally, Holland Pack states that it has *never* sold any products in Illinois. (Doc. 10, Ex. 8, ¶ 11.)

As Defendants' Motion to Dismiss raises several separate issues under **Federal Rule of Civil Procedure 12**, the Court will first address the challenge to personal jurisdiction.

## II. <u>ANALYSIS</u>

**A.     EXISTENCE OF PERSONAL JURISDICTION OVER DEFENDANTS**

Once a defendant moves to dismiss pursuant to **Federal Rule of Civil Procedure 12(b)(2)**, a plaintiff has the burden of establishing the existence of personal jurisdiction over an out of state defendant. ***Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (internal citations omitted)**. A plaintiff must provide sufficient evidence to establish at least a *prima facie* case of personal jurisdiction. ***Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987)**.

In a patent case, because it intrinsically involves federal patent law, determining the issue of personal jurisdiction is decided in accordance with the laws of the federal circuit, rather than the regional circuit in which the case arose. ***See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995); *see also Norkol/Fibercore v. Gubb*, 279 F. Supp. 2d 993, 995 (E.D. Wis. 2003)(citation omitted)**. Consistent with this notion, **Federal Rule of Civil Procedure 4(k)** provides guidance that even when subject matter jurisdiction is based upon federal question under **28 U.S.C. § 1331**, district courts must still apply the applicable state long-arm statute to determine personal jurisdiction. **FED. R. CIV. P. 4(k)(1); *see also 3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998); *Beverly Hills Fan Co. v. Royal Sovereign* Corp., 21 F.3d 1558, 1569 (Fed. Cir. 1994); *Worldtronics Int'l, Inc. v. Ever Splendor Enter. Co.,***

*Ltd.*, **969 F. Supp. 1136, 1139 (N.D. Ill. 1997); Norkol/Fibercore, 279 F. Supp. 2d at 995**.

Because this Court sits in the Southern District of Illinois, it will accordingly apply the Illinois statutory law along with federal circuit law to determine whether it has personal jurisdiction over either of Defendants in this case. In fact, Plaintiff must demonstrate that personal jurisdiction over both Defendants in this case complies with (1) the Illinois long-arm statute, (2) Illinois constitutional law, and (3) federal constitutional law. ***RAR, Inc.*, 107 F.3d at 1276**. Moreover, because the Illinois long-arm statute[5] "'permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions,'" the analysis then becomes a two-prong examination: (1) determining whether the applicable state long arm statute is satisfied and (2) whether exercise of jurisdiction is consistent with the constitutional requirements of due process. ***Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002) (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000); *see also FMC Corp. v. Varonos*, 892 F.2d 1308, 1311 n.5 (7th Cir. 1990)**.

In comporting with the constitutional requirements of due process, "a state court may exercise personal jurisdiction over a nonresident defendant only so

_____

[5] The Illinois long-arm statute, **735 ILL. COMP. STAT. 5/2-209(c)**, reads:
A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

long as there exist 'minimum contacts' between the defendant and the forum state."

***World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting**

***Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).**  As such, a defendant's

contacts with the forum state must be such "that maintenance of the suit 'does not

offend 'traditional notions of fair play and substantial justice.'"" ***Id.* at 292 (quoting**

***Int'l Shoe*, 444 U.S. at 316 (quoting *Miliken v. Meyer*, 311 U.S. 457, 463**

**(1940))).**   This  standard  is  applied  according  to  whether  the  forum  state  is

attempting to assert "'general' or 'specific' jurisdiction over a defendant in a suit

'arising out of or related to the defendant's contacts with the forum.'"  ***RAR, Inc.*,**

**107 F.3d at 1277 (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*,**

**466 U.S. 408, 414 n.8 (1984)).**

General jurisdiction over an out of state defendant is not dependent

upon the whether the underlying issues in plaintiff's suit arose out of or related to

defendant's contacts with the forum state.  ***Id.*  Instead, an out of state defendant is

subject to general jurisdiction of the forum state when the defendant has "continuous

and systematic general business contacts" with the forum state.  ***Id.*  On the other

hand, an out of state defendant may be subject to specific jurisdiction of the forum

state when the issues in plaintiff's suit arise out of or relate to the defendant's

minimum contacts with the forum.  ***Id.*  These minimum contacts, if "purposely

availed" by defendant towards the forum state, should give the out of state defendant

"fair warning" that its activities may warrant imposition of the forum state court's

jurisdiction, such that the out of state defendant could "reasonably anticipate being haled into court" there. ***Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985)**.

### 1.    Specific Jurisdiction

In its Response opposing Defendants' **Rule 12(b)(2)** Motion to Dismiss for lack of personal jurisdiction, Plaintiff argues that both specific and general jurisdiction can be asserted in this case.  (Doc. 24, pp. 9-12.)  Asserting specific jurisdiction over Klerk's, as argued by Plaintiff, stems from a "stream of commerce" theory.  (Doc. 24, p. 9.)  According to Plaintiff, patent infringement cases generally find personal jurisdiction over an out of state defendant who has placed an infringing product into the stream of commerce, with the direct or indirect expectation that such products may be purchased by consumers in the forum state.  (*Id*. citing ***Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 427-28 (Fed. Cir. 1996)**).

Plaintiff states that Klerk's has placed the Tylar sleeve (alleged to be the infringing product) into the stream of commerce.  (*Id*. at 10.)  Further, Plaintiff continues to argue that specific jurisdiction exists over Holland Pack because while serving as Klerk's "exclusive agent" for distribution of the Tylar sleeve in the United States, it purposely endeavored to market this product to Illinois residents.  (*Id*.)  It is unclear from Plaintiff's Complaint exactly when the alleged products were put into the stream of commerce, but in Plaintiff's Response, it states that "[i]n 2004, Klerk's

. . . began to offer the Tylar sleeve for sale in the U.S." (Doc. 24, p. 2.)

Countering Plaintiff's argument, Holland Pack maintains that it has never sold any of the allegedly infringing products in Illinois, nor has Plaintiff alleged as much in either its Complaint or its opposing Response to Defendants' **Rule 12(b)(2)** Motion to Dismiss. (*Id.*) Moreover, Klerk's states that it has not sold any allegedly infringing products in Illinois in at least the past five years. (Doc. 10, p. 7 n.5.) As Plaintiff cannot show, nor has even alleged, that there has been an *actual sale* of the allegedly infringing product in Illinois, Defendants believe specific jurisdiction cannot be established based upon a stream of commerce theory. (*Id.* at 7.)

Further emphasizing their argument that they should not be subject to specific jurisdiction in Illinois, Defendants explain that the only "contacts" Plaintiff can show with Illinois are several letters sent by Holland Pack. (Doc. 24, p. 9.; *see also* Doc. 10, Exs. 1 & 2 to Ex. 8.) These few letters were apparently sent to several potential Illinois customers to inform them of the fact that Holland Pack was now serving as Klerk's U.S. agent  and inviting each one to attend a Chicago trade show to meet with a representative and view Klerk's products. Plaintiff proffers that these letters constitute "offers for sale," which should also sufficiently warrant the imposition of specific jurisdiction over Holland Pack and also over Klerk's.[6]

---

[6] Plaintiff asserts that any action of Holland Pack in the capacity as Klerk's exclusive agent, is thereby imputed to Klerk's for specific jurisdictional purposes. (Doc. 24, p. 9 n.5, citing **735 ILL. COMP. STAT. 5/2-209(a)**).

Specific jurisdiction exists pursuant to the requirements of the Illinois long arm statute when defendant commits any of the acts enumerated within subpart (a) of the statute or "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." **735 ILL. COMP. STAT. 5/2-209(a)&(c)**. Ultimately, Plaintiff states claims of patent infringement, which is a statutory tort under **35 U.S.C. § 271**. Therefore, the Illinois statute requires that the tortious act occur in Illinois for a finding of specific jurisdiction over an out of state defendant. *See* **735 ILL. COMP. STAT. 5/2-209(a)(2)**.

### a.      Stream of Commerce

Plaintiff suggests that Defendants's acts of placing the Tylar sleeve into distribution in the United States and directing market efforts towards Illinois residents warrants a finding of specific jurisdiction over both Defendants in this case. (Doc. 24, p. 10.)  In ***North American Philips Corp. v. American Vending Sales, Inc.***, the Federal Circuit analyzed whether a lawsuit for patent infringement subjected the defendants to specific jurisdiction under the Illinois long arm statute. Finding that liability for patent infringement under **35 U.S.C. § 271** "arises upon the making, suing, or selling of an infringing article," the Federal Circuit held that "the 'tort' of patent infringement occurs where the offending act is committed and not where the injury is felt." **35 F.3d 1567, 1579 (Fed. Cir. 1994) (relying on** *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, **21 F.3d 1558, 1570-71 (Fed. Cir. 1994) for its holding that patent infringement occurs where the allegedly infringing**

**sales are made**).  Accordingly, the Federal Circuit stated that "to sell an infringing article to a buyer in Illinois is to commit a tort there . . . .  To hold otherwise would exalt form over substance in the area where the Supreme Court generally has cautioned against such an approach."  *Id.* (**citing** *Burger King***, 471 U.S. at 478-79**).

As the defendants in *North American Phillips Corp.* had made many sales of the infringing article in Illinois, the Federal Circuit found that specific jurisdiction was applicable under the Illinois statute.  *Id.*  Moreover, the plaintiff's claims of patent infringement arose from the transaction and/or sales of the allegedly infringing articles.  *Id.*  Continuing its analysis, the Federal Circuit also found that defendants voluntarily placed many of the allegedly infringing articles into the stream of commerce with at least the constructive knowledge of a distributor that a quantity of those articles would be resold in Illinois.  *Id.* **at 1580**.  Consequently, the Federal Circuit believed the defendants' actions gave rise to sufficient minimum contacts with Illinois and that the defendants could then reasonably foresee being haled into Illinois court, thereby meeting the constitutional requirement of due process.  *Id.* **at 1580-81 (also finding that defendants purposefully availed themselves of the protections and privileges of Illinois**).

The Court finds the legal reasoning of *North American Philips Corp.* persuasive.  Plaintiff in the instant case has alleged various acts of patent infringement.  Defendants state that there has never been a sale of the Tylar sleeve

(the allegedly infringing product) made in Illinois.  The fact that Plaintiff has not argued otherwise substantiates Defendants' statement.  Plaintiff cites to the ***Beverly Hills Fan Co.*** and ***Viam*** cases in support of its stream of commerce theory: placing the infringing products into distribution throughout the United States warrants a finding of specific jurisdiction in the forum state because defendants should reasonably expect sales to occur within the forum state.  (Doc. 24, pp. 9-10, citing **Beverly Hills Fan Co., 21 F.3d 1565-66; Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed. Cir. 1996)**.)  However, the Court finds both of these cases distinguishable.

In ***Beverly Hills Fan Co.***, the Federal Circuit specifically found that the "situs of the injury [giving rise to Plaintiff's claim] is the location, or locations, at which the infringing activity directly impacts on the interest of the patentee, *here the place of the infringing sales in Virginia.*" **21 F.3d at 1571 (emphasis added); *see also North American Philips Corp*. 35 F.3d at 1578-79 (citing to *Beverly Hills Fan Co.*, explaining that the holding in that case was that patent infringement occurs where allegedly infringing sales are made)**.  Further, because sales had actually been made within the forum state, the tortious act prong of the state statute was met. **Beverly Hills Fan Co., 21 F.3d at 1571**.  Similarly, in ***Viam***, defendants had made sales of the allegedly infringing product within the forum state of California. ***Viam Corp.*, 84 F.3d at 429**.  Moreover, the Federal Circuit found that defendants further exploited the California market through its elaborate advertising

program.  *Id.*

The Court finds that the act of placing an allegedly infringing product into the stream of commerce should not be all that is required in a patent infringement suit to subject an out of state defendant to specific jurisdiction.  At least in this case, it seems more appropriately in line with the Illinois long-arm statute that the tortious act occur within the forum – that is, that the allegedly infringing sale(s) be made in Illinois.   At this point in the analysis, the Court cannot find that Defendants' actions meet the Illinois statutory requirements for a finding of specific jurisdiction under Plaintiff's stream of commerce theory.

### b.    Offers for Sale

Additionally, Plaintiff argues that Defendants should be subject to specific jurisdiction in Illinois because Holland Pack sent letters to potential customers in Illinois, amounting to sales offers, but fails to cite any supporting case law.  An "offer to sell" can also be grounds for liability of patent infringement under **35 U.S.C. § 271**,[7] thereby Plaintiff believes it should be construed as a "tortious act" for specific jurisdictional purposes.  Further, Plaintiff asserts that because Holland Pack was acting as exclusive agent for Klerk's, its actions are imputed upon Klerk's for jurisdictional purposes.  Conversely, Defendants argue that these few letters were not enough to establish minimum contacts, nor should they be construed as "offers

---

[7] **35 U.S.C. § 271(a)** reads, in pertinent part:
Except as otherwise provided in this title, whoever without authority makes, uses, ***offers to sell***, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.  (Emphasis added.)

for sale."

In **3D Systems, Inc. v. Aarotech Laboratories, Inc.**, defendant[8] did not sell the allegedly infringing product in the forum state, but had sent eight letters containing price quotations and descriptions of the merchandise for sale to four different companies located within the forum state.  **160 F.3d 1373, 1376 (Fed. Cir. 1998)**.  The letters themselves explicitly stated that they were not offers if and until executed by the recipient and returned to defendant.  **Id.**  Defendant also sent letters  to eighteen other prospective customers, including promotional materials consisting of videos and sample parts, to solicit orders.  **Id.**  The Federal Circuit found that the eight letters containing price quotations amounted to offers to sell, regardless of the fact they contained a statement that they were not offers.  **Id. at 1379.**  Ultimately, this finding allowed the Federal Circuit to find that defendant was subject to specific jurisdiction in the forum state.  **Id.**

In light of the guidance provided by the Federal Circuit in **3D Systems**, the Court finds that Defendants' letters[9] do not constitute "offers for sale."  Neither

---

[8]  The Court acknowledges that there were actually several defendants in the **3D Systems** case, but is only specifically referring to defendant Aaroflex within its summarization of the case. For simplicity's sake however, the Court elects to use the term "defendant."

[9]  Plaintiff identifies two letters, each sent by Mr. de Klerk to potential Illinois customers. These letters are attached as exhibits 1 & 2 to the Declaration of Jan de Klerk, which is filed as Exhibit 8 to Defendants' Motion to Dismiss (Doc. 10).

> **Exhibit 1** reads, in pertinent part:
> Holland-Pack is an independent company which is specialising [sic] in new packaging concepts for potted plants and flowers.  We are the agent for Klerks [sic] Plastics in the U.S. and have taken over the sale of sleeves from KPPM

(Continued on next page.)

do the letters provide price quotations, nor do they specifically solicit orders for Defendants' products.  At most, the letters amount to a request to set up an initial meeting with a sales representative – hardly a concrete offer.  Thus, the Court further finds no tortious act arising from these letters that would subject Defendants to specific jurisdiction under the Illinois statutory requirement.

In sum, the Court finds that it does not have specific jurisdiction over either of Defendants in this suit.  Plaintiff has alleged no infringing sales in the state of Illinois, nor can Defendants' letters be construed as offers for sale of the allegedly infringing products.  Now, however, it is necessary for the Court to examine whether general jurisdiction exists, as Plaintiff has also raised this issue in its opposing

---

(Footnote 9, continued from previous page.)

in South Carolina.  We are also the agents for Createch, a Dutch based machine producer.  They have developed machines for the automated packaging of bouquets and potted plants in sleeves.  The combination of the Klerks [sic] sleeves and Createch machines has been a great success in Europe and we will be introducing our products on the Ohio Short Course in July.  In may we will be in New Jersey and Pennsylvania to talk to clients and we would like to visit you if possible.  We would like to meet on Monday may [sic] 17th or Tuesday may [sic] 18th.  Please let us know if you are interested and if these dates fit your schedule.

**Exhibit 2** reads, in pertinent part:
We would like to inform you about 3 demonstrations of our Tylar system at horticultural shows in January.
Al-Par Peat will be showing the sleeves at the following locations:
- MNLA meeting and Trade show, The Great Lakes Trade Expo, Grand Rapids, Michigan, booth 304.  (Jan 10-12).
- Mid-Am Horticultural Trade Show, lakeside Center, Chicago, Ill., booth 1953 (Jan 19-21).
- CENTS, Columbus Convention Center, Columbus, OH.  (Jan 24-26)
Please feel free to have a look at our packaging again so you can convince yourself that the Tylar sleeve is a beautiful and innovative sleeve that makes your plant stand out from the rest.  It is easy, fast, clean and affordable, in other words everything you expect from a great plant sleeve.  For more information, price quotes and orders you can contact Al-Par or Holland-Pack.

Response to Defendants' instant motion.

###    2.    General Jurisdiction

Plaintiff does not argue that Holland Pack is subject to general jurisdiction; only Klerk's is addressed in Plaintiff's opposing Response.  Basically, Plaintiff asserts that Klerk's is subject to general jurisdiction in Illinois, pursuant to **735 ILL. COMP. STAT. 5/2-209(b)(4)**,[10] for "doing business" in Illinois.  The "doing business" theory allows an out of state defendant to be subject to general jurisdiction of the forum state, even if Plaintiff's cause of action does not arise from that business.  Klerk's has been in various contractual relationships with Plaintiff for nearly 20 years.  (Doc. 24, p. 12.)  Even though it does not have a physical presence in Illinois, Plaintiff asserts that this is unnecessary to establish that Klerk's is doing business for jurisdictional purposes.  (Doc. 10, p. 11, citing **Hanson v. Denckla, 357 U.S. 235, 251-53 (1958)**.)

Counter-arguing Plaintiff's doing business theory, Klerk's concedes that although it had extensive prior contractual dealings with Plaintiff, it is no longer in a contractual relationship with Plaintiff.  Therefore, Klerk's believes that it is not

---

[10] **735 ILL. COMP. STAT. 5/2-209(b)** reads:
>    (b) A court may exercise jurisdiction in any action arising within or without this State against any person who:
>>        (1) Is a natural person present within this State when served;
>>        (2) Is a natural person domiciled or resident within this State when the cause of action arose, the action was commenced, or process was served;
>>        (3) Is a corporation organized under the laws of this State; or
>>        (4) **Is a natural person or corporation doing business within this State.**

(Emphasis added.)

appropriate to submit an out of state defendant to general jurisdiction of the forum state based upon past, terminated contacts if such defendant was not doing business within the forum at the time it was served with process.  Klerk's cites to **Reeves v. B&O R.R. Co**, 171 Ill. App. 3d 1021, 526 N.E.2d 404, 122 Ill. Dec. 145 (1988) in support.

   **Reeves** held that for jurisdictional purposes, the focus of the doing business inquiry must be the time the out of state defendant "became a party to the suit or was served with process." **Reeves, 71 Ill. App. 3d at1027, 526 N.E.2d at 408, 122 Ill. Dec. at 149**.  Accordingly, the Illinois Appellate court noted that the relevant time frame for determining whether an out of state defendant was "doing business" continuously and systematically in order to subject defendant to general jurisdiction of the form state was from "approximately the time the claim arose or occurred up to and including the time the defendant was made party to the suit, and service of process was attempted." **Id. (also noting that while reviewing contacts over the entire period of time was important, the most crucial was the time which defendant was made party to the suit)**.

   From the facts stated by the parties, the last contract between Plaintiff and Klerk's terminated in June 2002.  Since that time, Klerk's declares that it has not conducted business in Illinois, or had other continuous and systematic contacts with Illinois to warrant the imposition of general jurisdiction.  Plaintiff filed this action on April 15, 2005, and alleges in its opposing Response to Defendants' instant

motion that the "activities which constitute the basis for [its] claim of infringement" arose in 2004.  (Doc. 24, p. 2.)  The record indicates that Klerk's was served three days after Plaintiff filed its complaint. (Doc. 6.)

Cases cited by Plaintiff in its opposing Response all involve an out of state defendant who was continuing to do business in the forum state, or had only *recently* ceased its business contacts with the forum.[11]  Such is not the instant case. Klerk's has not conducted business, or made sales in Illinois since 2002, and Plaintiff has failed to dispute this fact with sufficient evidence or allegations proving otherwise.  Because Klerk's has not had any systematic and continuous contacts with Illinois for three years prior to being served by Plaintiff in this suit, the Court does not find it appropriate to now subject Klerk's to the general jurisdiction of Illinois.

The Court finds that both Defendants are not subject to specific jurisdiction in Illinois.   Additionally, Klerk's is also not subject to general

---

[11]  In particular, Plaintiff cited the case of ***Michael J. Neuman & Assocs., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721 (7th Cir. 1994)**, which distinguished the ***Reese*** case, stating:

> In ***Reeves v. Baltimore & Ohio R.R. Co.***, the court stated "[s]ince the theory of jurisdiction in the 'doing business' concept is based upon a permanent and continuing relationship with Illinois, this necessarily suggests that the court must look to a continuous period of time, and not a specific fixed point in time." ***Reeves*, 171 Ill. App. 3d 1021, 122 Ill. Dec. 145, 148, 526 N.E.2d 404, 407 (1988).** While the court found that the critical point of a court's focus must be when a defendant is made a party to a suit, it examined a time period of approximately eight years. ***Id.*, 171 Ill. App. 3d at 1027, 122 Ill. Dec. at 149, 526 N.E.2d at 408.** Because the defendant did not do any business or have any income from Illinois for four years prior to being served, it was not doing business in Illinois on a continuous nature so as to make it amenable to personal jurisdiction. ***Id.***

***Michael J. Neuman & Assocs.*, 15 F.3d at 724**.

jurisdiction.  Therefore, the Court does not have proper jurisdiction over either of the Defendants and must grant their **Rule 12(b)(2)** Motion to Dismiss.  In so doing, there is no need to examine the other issues raised in Defendants' instant motion, nor is there need to discuss the constitutional prong of the jurisdictional analyses. Yet, there is one more topic for discussion within this Order and that is Plaintiff's Motion for Leave to Supplement the Record.  (Doc. 30.)

**B.     PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT RECORD**

Plaintiff seeks to introduce further evidence to support its opposition to Defendants' **Rule 12(b)(2)** Motion to Dismiss.  Particularly, Plaintiff attaches a declaration to its motion to introduce evidence of a letter, dated July 28, 2005, sent by Holland Pack to the declarant, who is an Illinois resident and business owner. Essentially, Plaintiff argues that this letter amounts to an "offer for sale" and should thereby make Holland Pack amenable to specific jurisdiction in Illinois for sending the letter, and this act should be imputed to Klerk's, as Holland Pack was acting in the capacity as its exclusive agent.  (Doc. 30.)

The July 28 letter did not exist when Plaintiff filed its Complaint in April 2005.  As the Court has already found that Plaintiff's initial evidence did not give rise to specific or general jurisdiction over Defendants in this case, neither will this supplemental evidence.  Jurisdiction over an out of state defendant must exist, if at all, at the time when Defendant is served with summons.  This comports with the jurisdictional service requirements under **Federal Rule of Civil Procedure 4** and

also compliments the legal requirement that federal subject matter jurisdiction exist at the time of filing a complaint.  ***Gossmeyer v. McDonald*, 128 F.3d 481, 487 (7th Cir. 1997) (in the context of examining whether removal of the case was proper, court stated that subject matter jurisdiction must exist within the allegations of the complaint at the time the removal petition was filed); *see also Dehmlow v. Austin Fireworks*, 963 F.2d 941, 948 (7th Cir. 1992) ("[T]he adequacy of service of process corresponds to the existence of personal jurisdiction over the defendant.")**.

Moreover, declaring that an alleged "offer for sale" letter made *after* the filing and service of summons is contact sufficient to warrant specific jurisdiction seems contradictory to the tenet that the exercise of personal jurisdiction be constitutionally reasonable – i.e., to give fair warning to an out of state defendant that it may be haled into court in the forum state.  Such warning must exist *prior to* the imminent threat of litigation within the forum; otherwise, it would not be a proper warning.  Instead, Defendants' action (or imputed action) of sending the July 28 letter after the complaint was filed seems outside the appropriate scope of the Court's personal jurisdiction analysis.  Therefore, Plaintiff's Motion for Leave to Supplement the Record is denied.

### III.  CONCLUSION

The Court finds that it does not have personal jurisdiction, general or specific, over either of Defendants.  To consider the other issues raised in

Defendants' Motion to Dismiss is unnecessary.  Further, the Court will not consider supplemental evidence of Defendants' contacts with the forum state made *after* the filing of Plaintiff's Complaint and service of summons.  As such, Defendants' **Rule 12(b)(2)** Motion to Dismiss is **GRANTED** for lack of personal jurisdiction and Plaintiff's Motion for Leave to Supplement the Record is **DENIED**.

      **IT IS SO ORDERED.**

      **Signed this 4th day of January, 2006.**

                                   /s/            David RHerndon
                                   **United States District Judge**